IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NORMAN K.E.K. TANAKA, | ) | CV. NO. 07-00289 DAE-LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INTERNATIONAL | ) | |
| BROTHERHOOD OF | ) | |
| ELECTRICAL WORKERS, LOCAL | ) | |
| 1260 (AFL-CIO); AND ITT | ) | |
| INDUSTRIES; JOHN DOES 1-10; | ) | |
| DOE ENTITIES 1-10; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL
1260'S MOTION TO DISMISS AND/OR TO STRIKE AND GRANTING IN
PART AND DENYING IN PART DEFENDANT ITT CORPORATION'S
<u>MOTION TO DISMISS</u>

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing the motions and the supporting and

opposing memoranda, the Court GRANTS IN PART AND DENIES IN PART the

Union's Motion and GRANTS IN PART AND DENIES IN PART ITT's Motion.

## BACKGROUND

All facts set forth below are those alleged by Plaintiff in his Complaint. Plaintiff states that he was employed by ITT on Kauai as a Category III Fire Fighter. Plaintiff originally accepted employment on May 15, 2000, which was contingent on completion of a drug test and security clearance. Plaintiff completed all of the requirements, and remained employed until he resigned in March 2003 to accept employment with the Sate of Hawaii as an Airport Rescue Fire Fighter in Kahului. Plaintiff is still employed by the State of Hawaii.

In 2006, while visiting Kauai, Plaintiff met with Defendant ITT's Fire Chief, who allegedly informed Plaintiff that ITT was shorthanded and that Plaintiff could be rehired if he were interested. Plaintiff reapplied and was offered a position as a Category III Fire Fighter. Plaintiff became a member of the Union upon his reemployment.

The Collective Bargaining Agreement (the "CBA") between the Union and ITT provides that Category III employees are temporary employees hired on a call-in basis. "Such person is utilized to replace a regular full-time employee on a short-term basis (i.e., one or two days) due to vacation, illness, jury duty, etc. Such a person is not assigned to a regular scheduled work shift," and is exempt from the Hours of Work provision of the CBA. (ITT's Ex. 1.) The CBA

also provides that grievances are waived unless submitted "within fifteen (15) working days after the occurrence giving rise to it."  (Id.)

Plaintiff was told that he would have to go through the security clearance process again.  Plaintiff allegedly made several attempts to apply for security clearance using a specific computer program, but was unable to access the system.  Plaintiff allegedly informed personnel at ITT industries of his difficulties and they went back and forth trying to resolve the problem.

On or about January 3, 2007, Plaintiff received a letter informing him that he was terminated from employment for failure to complete the security clearance in a timely manner or take a random drug test.  Plaintiff asserts that he was never told that he had to take a random drug test, and was not assigned to take one,  and that he would take one at any time.

Plaintiff contacted the Union on January 16, 2007, and informed them that he wished to file a grievance.  The Union allegedly informed Plaintiff that because he was a Category III employee, there was nothing they could do for him.  After pushing the Union to provide him with a specific reason in writing, the Union agreed to file a grievance.  Plaintiff provided the Union with the necessary information for the grievance.  ITT received the grievance in writing on January 24, 2007.  ITT rejected the grievance as being untimely, stating that the date of

termination was December 22, 2006, and thus the 15 day time frame to file a grievance had expired on January 17, 2007.

On May 30, 2007, Plaintiff filed his Complaint alleging breach of the duty of fair representation against the Union, breach of the CBA against ITT, and intentional infliction of emotional distress ("IIED").  The Union filed a motion to dismiss on July 12, 2007, and Defendant ITT filed its motion to dismiss on August 20, 2007.  Plaintiff filed an opposition to the Union's motion on September 6, 2007, and an opposition to Defendant ITT's motion on September 11, 2007.  The Union filed a reply brief on September 10, 2007, and ITT filed a reply on September 13, 2007.[1]

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Generally, a court's review of a motion to dismiss is limited to the contents of the complaint. Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the plaintiff.  Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416

---

[1] ITT's request that this Court not consider Plaintiff's opposition is moot because prior to taking this matter under advisement, the hearing date changed and thus, the opposition was timely filed.

Case 1:07-cv-00289-DAE-LK   Document 34   Filed 10/26/07   Page 5 of 11      PageID #: 416

F.3d 940, 946 (9th Cir. 2005). A complaint does not need to include detailed facts to survive a Rule 12(b)(6) motion to dismiss. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965. (2007). However, in providing grounds for relief, a plaintiff must do more than recite the formulaic elements of a cause of action. Id. at 1966. Plaintiff must include enough facts to raise a reasonable expectation that discovery will reveal evidence. In other words, a plaintiff must allege enough facts to state a claim for relief that is plausible on its face. Id. at 1974. "[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim." McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).

When a defendant attaches exhibits to a motion to dismiss, the court ordinarily must convert the motion into a summary judgment motion so that the plaintiff has an opportunity to respond. Parrino v. FHP, Inc., 146 F.3d 699, 706 n.4 (9th Cir. 1998). However, where "an attached document is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished." Id. Therefore, "a district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" Id. at 705 (quoting Branch v. Tunnell, 14 F.3d 449, 454

5

(9th Cir. 1994)); see also Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

In this case, Plaintiff's Complaint references his membership in the Union, the CBA, and that the Union stated that they could not help him because he was a Category III employee.  Because the motions rest in part on the definition of Category III employee and the time for filing grievances, the CBA is clearly essential to Plaintiff's Complaint.  None of the parties dispute the authenticity of the CBA.  Accordingly, this Court will consider the CBA in ruling on the Defendants' motions to dismiss.

## DISCUSSION

Defendants argue that Plaintiff cannot establish a breach of the duty of fair representation or breach of the CBA.  Defendants assert that because Plaintiff was a Category III employee, he was not guaranteed a certain number of hours of work and therefore, there was no remedy available to him.  ITT also argues that Plaintiff's grievance was untimely.  Defendants also argue that Plaintiff's IIED claim is preempted by federal labor law.

A.   Claims for Breach

Defendants argue that because Plaintiff was a temporary employee hired on a call-in basis and exempt from the Hours of Work provision of the CBA,

there is no remedy available to him under the CBA.  This Court disagrees.

A Union breaches its duty of fair representation "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."  Vaca v. Sipes, 386 U.S. 171, 190 (1967).  The standard of proving a breach of the duty of fair representation is met "when the union arbitrarily ignores a meritorious grievance or processes it in a perfunctory fashion." Herman v. United Bhd. of Carpenters and Joiners of Am. Local Union No. 971, 60 F.3d 1375, 1380 (9th Cir. 1995).  Examples of such a breach include failing to conduct a minimal investigation of a grievance, engaging in conduct without a rational basis, the conduct reflects a reckless disregard for the rights of the individual employee, or "the individual interest at stake is strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim." Peterson v. Kennedy, 771 F.2d 1244, 1254 (9th Cir. 1985) (citation omitted).  However, a "union's representation of its members 'need not be error free.' . . . [and] mere negligent conduct on the part of a union does not constitute a breach of the union's duty of fair representation." Id. at 1253 (citation omitted).

Here, there are certainly benefits to being hired as a temporary employee and being on a list of persons available to be used on a call-in basis.

Although not guaranteed a certain number of hours of work, by firing Plaintiff, ITT deprived him of the possibility of ever being called in.  Furthermore, as a Category III employee, Plaintiff was not exempt from the "just cause" for termination provision of the CBA.  Therefore, the possible remedy for Plaintiff is to be rehired and placed back on a list of Category III employees.  The Union argues that its determination was based upon an interpretation of the CBA, which it believes was reasonable.  However, Plaintiff has alleged enough facts to demonstrate that the Union's interpretation was unreasonable, as he clearly has a remedy.

      Furthermore, the Union has not claimed that it did not process Plaintiff's grievance in a timely manner because it was meritless.  Indeed, Plaintiff has alleged facts that could show that the Union filed the grievance only after Plaintiff's insistence, and gave up on pursuing the grievance further without an investigation to its merits.  In addition, ITT rejected the grievance for being untimely, not because it was meritless.  Plaintiff alleges that he contacted the Union in a timely fashion and any delay in filing the grievance was the fault of the Union.  Therefore, Plaintiff's allegations are sufficient to show that the Union's conduct was more than negligent, and Plaintiff has created a genuine issue of material fact as to whether the Union breached its duty of fair representation by determining, possibly in an arbitrary or perfunctory manner, that Plaintiff had no

available remedy, when in fact he did, and by allegedly failing to file the grievance in a timely manner, and/or pursue the grievance further.

ITT argues that Plaintiff's breach of CBA claim should be dismissed because his grievance was untimely. "[A] breach of a duty of fair representation by the union is a necessary prerequisite to a successful suit against the employer for a breach of the [collective bargaining agreement]." Bliesner v. Commc'n Workers of Am., 464 F.3d 910, 914 (9th Cir. 2006); Vaca, 386 U.S. at 186 (the wrongfully discharged employee may bring an action against his employer . . . provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance"). A claim against an employer under section 301 fails where the plaintiff cannot show that the Union breached its duty of fair representation. See Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1060 (9th Cir. 1989).

Here, there are genuine issues of fact as to whether the Union breached its duty by failing to file the grievance in a timely manner. Moreover, Plaintiff has alleged that the timeliness issue was through no fault of his own, but was the Union's fault. Finally, although ITT argues that Plaintiff's termination date was December 22, 2006, and that date should be considered the "occurrence" date from which the filing period should run, Plaintiff alleges that he was not

9

informed of his termination until January 3, 2007. Fifteen working days from January 3, 2007, is January 24, 2007, the day the grievance was filed.[2] Accordingly, there is a genuine issue of fact concerning whether the grievance was timely filed. Indeed, the Union states that it believes the grievance was timely filed. Because factual issues regarding the timeliness of the filing of the grievance and the Union's breach of its duty of fair representation remain, Plaintiff's claim against ITT for breach of the CBA also survives the motion to dismiss.

B.    IIED Claim

Defendants assert that the emotional distress claim is preempted by the Labor Management Relations Act. In his opposition, Plaintiff states that his IIED claim is dismissed via stipulation. Since there is no formal stipulation on the record dismissing this claim, this Court hereby GRANTS both the Union and ITT's motion to dismiss Plaintiff's IIED claim.

---

[2]This calculation assumes that Martin Luther King day on January 15, 2007, was a working day and that Saturdays and Sundays are non-working days.

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART the Union's Motion to Dismiss and GRANTS IN PART AND DENIES IN PART ITT's Motion to Dismiss.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 25, 2007.



_____
David Alan Ezra
United States District Judge

Tanaka v. International Bhd. Of Elec. Workers, et al., CV No. 07-00289; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1260'S MOTION TO DISMISS AND/OR TO STRIKE AND GRANTING IN PART AND DENYING IN PART DEFENDANT ITT CORPORATION'S MOTION TO DISMISS